## TUNNELL v. NEILL et al.

### No. 3919.

Court of Civil Appeals of Texas. Texarkana.

Dec. 5, 1930.

Rehearing Denied Dec. 11, 1930.

531

Read, Lowrance & Bates, of Dallas, for appellant.

Wynne & Wynne, of Wills Point, for appellees.

HODGES, J.

This is a suit to reform a deed and recover an undivided one-half interest in the mineral rights in a tract of fifty acres of land situated in Van Zandt county. The land formerly belonged to J. W. Neill and his wife, Mrs. Exa Neill. It was incumbered with liens for debts aggregating approximately $1,800. A part of those debts were due on notes held by the appellant, A. Glover Tunnell. On November 25, 1921, Neill and wife executed a deed conveying the land to the appellant in consideration of the cancellation of the notes held by him and his assumption of other notes for which the land was mortgaged. In addition to the usual granting clause conveying the land, the deed contained the following: "It is further agreed and understood that I reserve to J. W. Neill $\frac{1}{16}$ of the oil royalty on the above described real estate so long as I hold same in my possession." Some time later J. W. Neill died, leaving his wife and several minor children. In July, 1929, Mrs. Neill and her children filed this suit against the appellant to reform that portion of the deed which is quoted above upon the grounds of a mutual mistake. The petition alleged that the real contract upon which the deed was based was that the grantors should retain one-half of all the mineral rights in fee in the land, and that it was intended that such a reservation should be written into the deed. The defendant, Tunnell, answered generally and specifically, and also pleaded the four-year statute of limitation. The court submitted several special issues to the jury, in response to which the jury found as follows:

"1. That there was a mutual mistake of all parties to the deed as to the proportion of the royalty retained in the deed.

"2. That at the time of the execution and delivery of the deed, the defendant A. Glover Tunnell understood that the deed reserved one-half of all minerals instead of $\frac{1}{16}$ of the oil royalties as written in the deed.

"3. That Neill and wife did not know at the time they executed the deed that it contained the provision as written in the deed with reference to the minerals and oil royalty.

"4. That the notary public did not read to Mrs. Neill the provision as written in the deed with reference to the minerals and oil royalty.

"5. That the notary public represented and explained to Mrs. Neill and J. W. Neill that the provision in the deed with reference to the minerals reserved to them a one-half of the minerals and royalty instead of $\frac{1}{16}$ as written therein.

"6. That the notary public represented and explained to Mrs. Neill and her husband that the provision in the deed with reference to the minerals reserved to them one-half instead of $\frac{1}{16}$ as written therein.

"7. That J. W. Neill did not know prior to his death that the deed in question only reserved a $\frac{1}{16}$ oil royalty as written in the deed."

The jury also found that J. W. Neill and Mrs. Neill could not, by the exercise of reasonable diligence at any time prior to four years of the filing of this suit, have known that the deed only reserved one-sixteenth oil royalty instead of one-half, as claimed by plaintiffs. Upon those findings, the court entered a judgment reforming the deed as to the oil reservation so as to read as follows: "That I reserve to J. W. Neill one-half of the oil royalty on the above described real estate so long as defendant A. G. Tunnell holds same in his possession."

Both parties are urging objections to that judgment. Tunnell, the defendant below, appellant here, contends that under the evidence the court should have instructed the jury to return a verdict in his favor upon two grounds; (1) Because it conclusively appeared from the evidence that the plaintiffs' cause of action, if they ever had any, was barred by the four-year statute of limitation; and (2) because under the evidence the plaintiffs were not entitled to any reformation of the deed so as to change the language originally written therein. The appellees, plaintiffs below, insist that under the evidence and answers of the jury the deed should have been so reformed as to express a reservation to the grantors of one-half of the mineral rights in the land in fee without any limitation.

■ It appears from the evidence that, when the deed was originally written, it was an absolute conveyance of the land in fee. When presented for her signature, Mrs. Neill objected to signing the deed without some reservation of the mineral rights. The notary who wrote the deed and took her acknowledgment testified: "The best I remember, I wrote the deed, carried the deed I drew over with me at night and they executed it next morning—J. W. Neill and his wife, Exa Neill, were there at the store. Yes, after I had written the deed one day and had brought it back to the store next morning there was a clause added in that deed. I wrote the clause in the deed. This is the clause I wrote in the deed after I brought it back to the store. After I came back to the store that morning J. W. Neill and his wife had discussed the royalty clause and wanted that added and I added the clause and that is what they agreed upon. After I

had written that clause in there, Mr. J. W. Neill signed the deed and his wife, Exa Neill, signed the deed—I read the clause to Mrs. Neill and explained to her that it provided for $\frac{1}{16}$ royalty. That clause is written in the deed in blue ink; the balance of the deed is in black ink."

On cross-examination the witness testified: "I wrote the clause in the deed at the suggestion of the Neills. Possibly the intent of the deed I drew was to reserve to J. W. Neill and wife one-half of the royalty—there wasn't anything said about mineral interests at all when the deed was written, they had me write $\frac{1}{16}$. I possibly told Mrs. Neill that meant one-half of the royalty."

On redirect examination the witness said: "I just added to the deed on that morning the language they requested me to add; I wrote it in the deed at the suggestion of both Mr. and Mrs. Neill, wrote what they wanted put in it. I suppose they both knew the language I used in the clause,— Yes, they heard the language. They talked it over next morning and wanted the royalty clause put in and I said, 'All right, call out what you want, I will add it in,' and they called it out and I added it in there at their suggestion. I don't remember whether anything was said there about one-half of the mineral rights, I just remember that is what they told me to put in the deed."

Mrs. Neill testified in substance as follows: Her understanding was that they were to reserve one-half of the mineral rights in the land. The notary who took her acknowledgment told her that the one-sixteenth in the clause meant one-half of the mineral rights. She did not know any better at the time. She told him she would not sign the deed until that clause was put in it. The deed was then carried away and later brought back corrected, but she did not see the correction inserted. She first learned that the deed only reserved one-sixteenth of the royalty so long as Mr. Tunnell owned it in July just before filing her suit. Upon discovering the limitation in the deed, she interviewed the appellant, Tunnell, and he told her that he would not agree to any modification of the deed. She further stated that she would not have signed the deed if it had not been represented to her that they were reserving one-half of the mineral rights in the land. She certainly would not have signed the deed if she had known that was the effect of it. On cross-examination she stated that she could read, but had signed the deed without reading it. It was her understanding of the agreement that they were to retain one-half of the mineral rights in fee without any restriction.

T. H. Williams, a brother of Mrs. Neill, and a witness for the plaintiffs in the suit, testified in substance as follows: That he went to the home of his sister in company with the notary who wrote the deed and took her ac-

knowledgment. He heard the notary tell Mrs. Neill in explanation of the clause reserving the one-sixteenth royalty that this reserved to her one-half. Mrs. Neill then said she would sign the deed, and she did sign it. On cross-examination he stated that, as well as he remembered, the notary read that clause to Mrs. Neill. He further said that Mrs. Neill had the deed shown to her.

The appellant, Tunnell, testified that the agreement was that she (Mrs. Neill) was to receive one-half of one-eighth retained under the lease. The first part of the clause of the reservation was intended to mean that he was to receive one-half and Mrs. Neill would receive one-half of the part that was retained under the lease; the lessor having seven-eighths. "On the $\frac{1}{8}$ left, if oil was discovered, we were to share equally. We were not to share in cotton or corn or anything but just the mineral rights. Mr. and Mrs. J. W. Neill were conveying the land to me—I expect to carry out my contract with Mrs. Neill and the other plaintiffs. Right now at this time I want them to have what the deed calls for, just according to the deed. We have a trade in writing showing just what they should have. In case oil was found under the land, they were to get $\frac{1}{16}$. I want Mrs. Exa Neill and her children to have what the deed calls for. We had no agreement prior to the writing of the deed as to the division of the money for the oil. Our agreement was as to the royalty."

■■ In this case there was no evidence of fraud or misrepresentation on the part of Tunnell, the grantee in the deed. The court did not submit that issue to the jury. In the absence of fraud or misrepresentation, a court of equity will reform an instrument only when the mistake alleged is mutual; that is, common to all the parties to the contract. Even then the evidence must be clear and convincing. Waco Tap. R. Co. v. Shirley, 45 Tex. 355, 377; Moore v. Giesecke, 76 Tex. 543, 13 S. W. 290, 291; Griffith v. Watkins (Tex. Civ. App.) 279 S. W. 489; American Alliance Ins. Co. v. Paul, 173 Ark. 960, 294 S. W. 58; Kentucky Title Co. v. Hail, 219 Ky. 256, 292 S. W. 817, 822; 1 Story Eq. Jur. (14 Ed.) § 162.

In the first case above referred to the court said: "It is, however, a well-established elementary principle, that, he 'who seeks to rectify an instrument, on the ground of mistake, must be able to prove not only that there has been a mistake, but must be able to show exactly and precisely the form to which the deed ought to be brought, in order that it may be set right according to what was really intended, and must be able to establish, in the clearest and most satisfactory manner, that the alleged intention of the parties to which he desires to make it conformable, continued concurrently to the minds of all parties down to the time of its execution. The evidence

must be such as to leave no fair and reasonable doubt upon the mind that the deed does not embody the final intention of the parties.' "

In American Alliance Insurance Co. v. Paul, the court approved this proposition of law: To enable a party to reform an instrument in writing it must be shown that the mistake was common to both parties, and that the instrument as delivered did not express the contract as understood by either. That reformation of a written contract will be granted only where the proof is clear, unequivocal, decisive, and beyond reasonable controversy.

In the Kentucky case above referred to, the court used this language: "A unilateral mistake is not ground for reformation. An instrument which agrees with the intention of one party, although executed under mistake as to the other, cannot be reformed. Before a court of equity will reform a written instrument it must appear that there was a valid agreement, that the written instrument failed to express such agreement, that this failure was due to mistake, and this must all appear by clear and convincing proof."

Mr. Story says: "The phrase 'mutual mistake' as used in equity, means a mistake common to all the parties to a written contract or instrument, and it usually relates to a mistake concerning the contents, or the legal effect of the contract or instrument. A mutual mistake, which will afford ground for relief from a contract by reforming it means a mistake reciprocal and common to both parties, where each alike labors under the misconception in respect to the terms of the written instrument."

The evidence in this case, when tested by the requirements stated above, does not authorize a reformation of this deed in the manner sought by Mrs. Neill and her children. Mrs. Neill, who was the strongest witness for the appellees, does not testify as to what the original contract was relative to the reservation of the mineral rights in the land. She merely stated what she intended to reserve and what her understanding of the deed was after the explanation made to her by the notary. Her understanding is entirely different from that entertained by the grantee, Tunnell, according to his testimony. There is no evidence that the notary upon whose explanation Mrs. Neill relied represented Tunnell or had been selected by him to prepare the deed.

Moreover, the land was the community property of J. W. Neill and his wife. J. W. Neill was one of the grantors and an important party to that transaction. He was dead at the time of the trial of this case, and there is no definite evidence offered as to what he intended to reserve, or how he understood the contract at the time he signed the deed.

■ In this case, the burden rested upon the appellees to prove, not only that there was a mistake common to all the parties to this deed, but also to prove what the original contract was upon which the deed was based. We do not think that burden was discharged in this case.

The sufficiency of the evidence to support a judgment for the reformation of the deed as contended for by Mrs. Neill was challenged by the appellant in his request for a peremptory instruction. We have concluded, however, that, because of the state of the evidence, the judgment should be reversed and the case remanded for another trial.